## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
ERIC MOY and JAQURIS MOY     :   Civ. No. 3:18CV01754(SALM)
                             :
v.                           :
                             :
STATE FARM FIRE & CASUALTY   :
COMPANY                      :   January 21, 2022
                             :
-----------------------------x
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Eric Moy and Jaquris Moy ("plaintiffs" or "the Moys") bring this action against defendant State Farm Fire & Casualty Company ("defendant" or "State Farm") for breach of an insurance contract. The Moys allege that (1) State Farm breached its insurance contract with them by failing to pay their claim for water damage, see Doc. #44 at 1-2; (2) State Farm breached the implied covenant of good faith and fair dealing in the "investigation and adjustment of the Plaintiffs' claim," id. at 2; (3) State Farm "was negligent in the adjustment and handling of the Plaintiffs' claim[,]" id. at 3; (4) State Farm committed "unfair and deceptive acts or practices in the conduct of its business[]" in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA"), id. at 4; and (5) they are entitled to a declaratory judgment that State Farm "is obligated to afford coverage and pay for the Plaintiffs' property damages pursuant

to the subject policy." Id. at 7.

Pursuant to Federal Rule of Civil Procedure 56(a), State Farm moves for summary judgment on all of plaintiffs' claims. See Doc. #76. For the reasons set forth below, defendant's Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto. Unless otherwise specified, the following facts are undisputed.

Plaintiffs "maintained a homeowner's insurance policy with State Farm for the insured property; Policy No. 07-BB-B969-2" ("the Policy"). Doc. #78 at 1, ¶3; see also Doc. #44 at 1.

On January 10, 2018, Mrs. Moy reported "a potential water damage claim" to State Farm. Doc. #78 at 3, ¶7; see also Doc. #78-1 at 65 ("File History Information" from State Farm's internal system bearing Policy Number 07-BB-B969-2 and Claim Number 07-2615-P44). On January 12, 2018, a State Farm representative entered a note in the File History Information that Mrs. Moy had reported "there was a broken pipe behind the kitchen cabinets, specifically the line to the pot filler[]" and that "she was not able to see the pipe leaking." Doc. #78-1 at 62. The representative further noted that Mrs. Moy told State Farm that the "[p]ipe may have been leaking for a long period of

time[]" and he advised her that "if the leak occurred over a long period of time, the loss may be excluded[.]" Id. "On January 25, 2018, State Farm's claim representative William Bird inspected" plaintiffs' property. Doc. #78 at 3, ¶10. Mr. Bird "inspected the area immediately behind and below the [plaintiffs'] kitchen cabinets[,]" id. at ¶11, and found mold and wood rot on the back of the kitchen cabinets and on the subfloor and joists below those cabinets. See id. at ¶¶12-14. Plaintiffs dispute Mr. Bird's finding of "rot and discoloration[]" only to the extent that it "implies the Plaintiffs were aware of the condition[.]" Doc. #91 at 4, ¶14. Mr. Bird "concluded that the damage was caused by a continuous water leak from the pot filler." Doc. #78 at ¶15. In his affidavit, Mr. Bird opined that the damage "obviously had occurred over a long period of time." Doc. #78-1 at 68, ¶10. After his investigation, Mr. Bird "verbally informed the plaintiffs that their loss was not covered due to the continuous leakage of water as well as the presence of mold." Doc. #78 at 4, ¶16.

On January 25, 2018, Mr. Bird wrote to plaintiffs to formally deny their claim on the basis that it was "not covered under [plaintiffs'] policy[]" because of the policy language that excluded "continuous or repeated seepage or leakage of water" ("the CRSL Exclusion") and/or the "remediation of

fungus[.]" Doc. #78-1 at 70, 72; see also Doc. #78 at 4, ¶17.
The CRSL Exclusion, which is set forth under Section I of the
Policy, states:

> 1. We do not insure for any loss to the property
> described in Coverage A which consists of, or is directly
> and immediately caused by, one or more of the perils
> listed in items a. through n. below, regardless of
> whether the loss occurs suddenly or gradually, involves
> isolated or widespread damage, arises from natural or
> external forces, or occurs as a result of any combination
> of these: ...

>> f. continuous or repeated seepage or leakage of
>> water or steam from a:

>>> (1) heating, air conditioning or automatic
>>> fire protective sprinkler system;

>>> (2) household appliance; or

>>> (3) plumbing system, including from, within or
>>> around any shower stall, shower bath, tub
>>> installation, or other plumbing fixture,
>>> including their walls, ceilings or floors;

>> which occurs over a period of time. If loss to
>> covered property is caused by water or steam not
>> otherwise excluded, we will cover the cost of
>> tearing out and replacing any part of the building
>> necessary to repair the system or appliance. We do
>> not cover loss to the system or appliance from which
>> the water or steam escaped; ... [and]

>> i. mold, fungus or wet or dry rot;

Doc. #78-1 at 36.

The Policy contains an endorsement limiting coverage
for losses related to fungus:

> Remediation of Fungus. ...

> b. We do not cover fungus which is the result of:

> (1) continuous or repeated seepage or leakage of water or steam from a:
>> (a) heating, air conditioning or automatic fire protective sprinkler system;
>> (b) household appliance; or
>> (c) plumbing system, including from, within, or around any shower stall, tub installation, or other plumbing fixture, including their walls, ceilings or floors; or
>
> (2) defect, weakness, inadequacy, fault or unsoundness in:
>> (a) planning, zoning, development, surveying, siting;
>> (b) design, specifications, workmanship, construction, grading, compaction;
>> (c) materials used in construction or repair; or
>> (d) maintenance;
>
> of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

Id. at 13. On October 9, 2018, plaintiffs filed this lawsuit in Connecticut Superior Court, Judicial District of Stamford-Norwalk. See Doc. #1 at 2. The action was removed to this Court on October 24, 2018. See Doc. #1. On January 16, 2020, State Farm filed a Motion to Dismiss the second, third, and fourth counts of plaintiffs' Amended Complaint. See Doc. #47 at 1. On June 15, 2020, after a hearing before Judge Robert N. Chatigny, State Farm's Motion to Dismiss was granted as to the fourth count only, thus dismissing the CUTPA and CUIPA claims. See Doc. #62. State Farm filed its Motion for Summary Judgment on March 1, 2021. See Doc. #76. This case was transferred to the

undersigned on October 21, 2021. See Doc. #97.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

## III. **DISCUSSION**

Defendant contends that it is entitled to summary judgment on the remaining claims of the Amended Complaint because the undisputed evidence establishes that the Policy did not provide coverage for plaintiffs' loss. See Doc. #77 at 1. Plaintiffs

argue that the policy language is ambiguous and void as against public policy. See Doc. #90 at 1.

### A.   **Count One -- Breach of Contract**

The parties' dispute over plaintiffs' breach of contract claim focuses on whether the policy language that excludes coverage for "continuous or repeated seepage or leakage of water" is ambiguous. Defendant asserts that it is entitled to summary judgment because the language unambiguously excludes the damage to plaintiffs' home. See Doc. #77 at 10-15. Plaintiffs respond that the policy language is both ambiguous, see Doc. #90 at 3-6, and contrary to public policy. See id. at 7-13.

### 1.   Policy Language

Under Connecticut law, "[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. ... If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." Lexington Ins. Co. v. Lexington Healthcare Grp., Inc., 84 A.3d 1167, 1173 (Conn. 2014) (citation and quotation marks omitted). The "policy language remains the touchstone of our inquiry." Conn. Ins. Guar. Ass'n v. Fontaine, 900 A.2d 18, 22 (Conn. 2006).

"A contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the

four corners of the policy giving the words of the policy their
natural and ordinary meaning and construing any ambiguity in the
terms in favor of the insured." Misiti, LLC v. Travelers Prop.
Cas. Co. of Am., 61 A.3d 485, 490-91 (Conn. 2013) (citations and
quotation marks omitted). However, the Court need not resolve an
ambiguity that does not exist, and must not manufacture one.
Thus, the "rule of construction that favors the insured in case
of ambiguity applies only when the terms are, without violence,
susceptible of two equally reasonable interpretations." Misiti,
LLC, 61 A.3d at 491 (citation and quotation marks omitted).

> In determining whether the terms of an insurance policy
> are clear and unambiguous, a court will not torture words
> to import ambiguity where the ordinary meaning leaves no
> room for ambiguity. Similarly, any ambiguity in a
> contract must emanate from the language used in the
> contract rather than from one party's subjective
> perception of the terms.

Zulick v. Patrons Mut. Ins. Co., 949 A.2d 1084, 1088 (Conn.
2008) (citation and quotation marks omitted). The Court will not
find that ambiguity exists "simply because lawyers or laymen
contend for different meanings[]" of certain words, or simply
"because a contract fails to define them[.]" New London Cnty.
Mut. Ins. Co. v. Nantes, 36 A.3d 224, 235 (Conn. 2012)
(citations and quotation marks omitted); see also Misiti, LLC,
61 A.3d at 491 ("The fact that the parties advocate different
meanings of the insurance policy does not necessitate a
conclusion that the language is ambiguous." (citations and

quotation marks omitted)).

When assessing insurance policy language, the Court must construe the language as applied to "a particular case" rather than "in the abstract." Lexington Ins. Co., 84 A.3d at 1175 (citation and quotation marks omitted) (emphasis removed) (collecting cases). If the Court finds the language to be "plain and unambiguous[,]" in the relevant context, it "must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co., 791 A.2d 489, 501 (Conn. 2002) (citation and quotation marks omitted).

The actual language of the Policy is undisputed, and is included in its entirety as part of the record. See Doc. #78-1 at 2-52. Plaintiffs' policy states, in relevant part:

> We do not insure for any loss to the property described in Coverage A which consists of, or is directly or indirectly caused by one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: ...
>
>> f. continuous or repeated seepage or leakage of water or steam from a: ...
>>
>>> (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture,

including their walls, ceilings or floors;

which occurs over a period of time.

Id. at 36; see also Doc. #44 at 6.[1] Plaintiffs argue that this

"language is inherently ambiguous because it fails to define a

period of time." Doc. #90 at 4. However, failure to define words

in a contract does not necessarily render them ambiguous. See

R.T. Vanderbilt Co., Inc., 156 A.3d at 555 ("[E]ven when

undefined, words are not ambiguous if common usage or our case

law gives them a single meaning." (citation and quotation marks

omitted)). Plaintiffs suggest that the language "continuous or

repeated seepage or leakage of water ... which occurs over a

period of time[]" is ambiguous because it could be construed to

"exclude[] coverage for any leakage or seepage of water that

occurs for one second[.]" Doc. #90 at 3-4. The Court need not

entertain the impact of a hypothetical "one second" of water

leakage because it is undisputed that plaintiffs' loss did not

occur in merely one second, and the Court must evaluate the

language in the context of plaintiffs' loss rather than a

hypothetical loss. See Lexington Ins. Co., 84 A.3d at 1175

---

[1] Defendant also references the "Fungus (Including Mold)
Exclusion Endorsement" in its Motion for Summary Judgment,
asserting that it provides an "alternative basis for denying the
plaintiffs' claim[.]" Doc. #77 at 7. Because the Court finds
that plaintiffs' loss was unambiguously excluded under the
"continuous or repeated seepage or leakage of water" language,
the Court need not address the fungus exclusion.

("[C]ontext is often central to the way in which policy language is applied; the same language may be found both ambiguous and unambiguous as applied to different facts." (citation and quotation marks omitted)).

Plaintiffs characterize the damage as the result of "a broken pipe behind the wall which allowed water to flow from the plumbing fixture[,]" Doc. #91 at 6, ¶7, and "accumulate[] behind the walls and cabinets and cause[] damage to the kitchen." Id. at ¶9. Defendant characterizes the damage as the result of "a continuous water leak[.]" Doc. #78 at 3, ¶15. Although the parties use different words to describe the damage, they ultimately agree on what caused the damage: water leaking from a broken pipe into the Moys' cabinet. Plaintiffs' avoidance of the words "continuous" or "over a period of time" in their descriptions does not change the undisputed fact that the damage occurred because of water leaking from a broken pipe, over some period of time, into plaintiffs' home. Indeed, plaintiffs' own characterization of the water as "accumulating" necessarily indicates that the damage occurred over a period of time. "Accumulate" is defined as "to increase gradually in quantity or number[.]" Accumulate, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/accumulate (last visited Jan. 9, 2022). Further, by Mrs. Moy's own admission, the pipe "may have been leaking for a long period of time[.]" Doc. #78-1 at 62.

Plaintiffs further assert that the language of amendatory endorsement HO 1133 makes "[t]he ambiguity of this policy language ... clear[.]" Doc. #90 at 5. Again, the relevant inquiry is whether the actual policy language is ambiguous in the context of plaintiffs' claim. The existence of more precise alternative language does not, by itself, render the actual policy language ambiguous as applied to <u>this</u> loss.

Finally, plaintiffs argue that a question of fact remains as to how much of the damage "occurred within the first thirteen days[.]" Doc. #90 at 6. This language is not found in the Policy. Rather, plaintiffs rely on case law discussing the "more common" language found in other policies, addressing leakage that occurs "over a period of weeks, months, or years[.]" <u>Id.</u> Interpretations of that language, which is not in the Policy, do not control or even helpfully inform the interpretation of the language of <u>plaintiffs</u>' policy. The question of whether damage occurred "within the first thirteen days" is relevant only where the policy at issue limits the CRSL exclusion to a period of "weeks" or "fourteen days;" the Policy at issue here includes no such language. <u>Compare</u> <u>Camillo v. Merrimack Fire Ins. Co.</u>, No. 3:18CV00610(JAM), Doc. #33-3 at 7 (policy language at issue with an exclusion based on "constant or repeated seepage or leakage of water or steam over a period of weeks, months or years"); <u>Wheeler v. Allstate Ins. Co.</u>, 687 F. App'x 757, 759 (10th Cir.

2017) (citing policy language regarding "continuous or repeated seepage or leakage over a period of weeks, months, or years[]"); Hicks v. Am. Integrity Ins. Co. of Fla., 241 So. 3d 925, 926 (Fla. Dist. Ct. App. 2018) (Policy language excluded losses only from "'[c]onstant or repeated seepage or leakage of water ... over a period of 14 or more days.'"). Accordingly, the amount of damage that occurred within the first fourteen days is not a material fact in this case, and thus any dispute does not preclude summary judgment.

The Court finds that the Policy unambiguously excludes any damage caused by the leaking pot filler, and therefore, State Farm did not breach the parties' contract by denying coverage.

2.   Public Policy

Plaintiffs nonetheless contend that the exclusionary language is void as against public policy and thus unenforceable. See Doc. #90 at 7-13. State Farm responds that "plaintiffs' entire [public policy] argument is predicated on a misunderstanding of the exclusionary language." Doc. #94 at 4.

Under Connecticut law, "it is well established that parties are free to contract for whatever terms on which they may agree[,]" but also "that contracts that violate public policy are unenforceable." Hanks v. Powder Ridge Rest. Corp., 885 A.2d 734, 742 (Conn. 2005) (citation and quotation marks omitted). Nonetheless, "the principle that agreements contrary

to public policy are void should be applied with caution and
only in cases plainly within the reasons on which that doctrine
rests[.]" Dougan v. Dougan, 970 A.2d 131, 139 (Conn. App. Ct.
2009), aff'd, 21 A.3d 791 (Conn. 2011) (citation and quotation
marks omitted).

Connecticut courts have been reluctant to find that
coverage exclusions in insurance policies violate public policy
unless coverage has been mandated by "the legislature or
regulatory authority." Jones v. Penn-Am. Ins. Co., No. X-07-
CV00-0079440-S, 2003 WL 22791096, at *2 (Conn. Super. Ct. Nov.
10, 2003). As a general rule, "it is beyond the responsibility
of a court to mandate" specific forms of insurance coverage.
Id.; see also Edwards v. Markel Corp., No. FBT-CV15-6054106,
2018 WL 709885, at *4-5 (Conn. Super. Ct. Jan. 5, 2018)
("[P]laintiff was unable to identify any specific authority,
statutory or otherwise, in support of" a claim that a coverage
exclusion violated public policy. "[D]etermining any exclusions
or limitations in the underlying insurance policy to be against
public policy -- and permitting a party to recover
notwithstanding the language of the policy -- is not a decision
to be made by this court."); Amica Mut. Ins. Co. v. Levine, 218
A.3d 188, 195 (Conn. App. Ct. 2019) (Coverage limitation in
insurance policy did not violate public policy where the
Connecticut statutes cited by the insured were "plainly

inapplicable to the parties' contractual agreement as set forth in the policy."); Middlesex Ins. Co. v. Quinn, 622 A.2d 572, 575 (Conn. 1993) ("In the absence of clear direction from the legislature, we decline to extend the public policy" regarding uninsured motorist coverage beyond what is expressly required by state statute. (citation and quotation marks omitted)).

"Overall, these decisions appear to indicate hesitancy with regard to finding insurance policies to be in violation of public policy or otherwise invalid, absent some direction from the legislature." Edwards, 2018 WL 709885, at *4.

Plaintiffs insist, in argument, that the language of HO 1133 is mandatory, and because the Policy did not include that language, it must violate public policy. See Doc. #90 at 7-13. However, there is no genuine dispute in the record that the language of HO 1133 is not mandatory. By plaintiffs' own admission, "the Commissioner [of Insurance] declined to require State Farm to change its policy retroactively[.]" Id. at 10.

As support for the assertion that the language of HO 1133 is mandatory, plaintiffs cite to Mrs. Moy's affidavit in which she states: "The Connecticut Department of Insurance originally concluded that the language in the Defendant's policy was not in conformity with State of Connecticut rules and regulations." Doc. #91-1 at 3, ¶14. However, plaintiffs provide no support for this assertion. More importantly, they make no argument as to

why what the Department supposedly "originally concluded" is
meaningful when the Connecticut Insurance Department later
<u>expressly</u> <u>disclaimed</u> this conclusion, and <u>declined</u> to require
State Farm to provide retroactive coverage.

Plaintiffs cite an email dated November 20, 2017, prior to
the date of the loss sustained by the Moys, from Attorney
Anthony Caporale, Counsel for the State of Connecticut Insurance
Department, in which Attorney Caporale stated that HO 1133 "is a
mandatory amendatory endorsement[.]" Doc. #91-5 at 2. However,
the record also includes a later email from Attorney Caporale in
response to a direct inquiry regarding HO 1133, dated July 25,
2018, in which he stated that he had "no authority to provide an
opinion or expertise[]" on the matter, deferred to the comments
from the members of the Property and Casualty Division of the
Department of Insurance ("the P&C Division"), and recommended
contacting "the Director of the P&C Division, George Bradner,
for any additional clarifications[]" rather than speaking to
him. Doc. #91-7 at 2.

The response from the P&C Division confirmed that the
language in HO 1133 is <u>not</u> mandatory. <u>See</u> <u>id.</u> ("We would require
State Farm to add this language upon a revision to their HO
program. ... However, we will not require that the coverage be
provided on a retroactive basis. Also, it is worth clarifying
... once again that the Department does not mandate the addition

of form HO 1133. The Department does not mandate endorsements.";
"[T]here are no 'mandated Endorsements' for homeowners in CT!
The CT amendatory ... is NOT mandatory! ... The CT Amendatory
simply helps a company to comply with specific statutory
requirement a state may have."). The record is clear on this
issue, and there is no genuine dispute of fact.

Plaintiffs also reference a letter from George Bradner, the
Director of the P&C Division, stating that insurers must meet
the ISO/AAIS minimum standards. See Doc. #90 at 7; see also Doc.
#91-4. This letter dates to 2014, and does not relate to the
Policy before the Court. See Doc. #90 at 7 (describing the
letter as being from 2014). The 2014 letter states that insurers
must adhere to ISO/AAIS standards, but offers no opinion on
whether HO 1133 is mandatory, nor on the Policy at issue here.
See Doc. #91-4 at 2-3.

Finally, plaintiffs argue that this loss would be covered
"under State Farm's current policy[.]" Doc. #90 at 12. But the
fact that State Farm has adopted the language in later-issued
policies does not dictate a finding that this Policy's failure
to include the language violates public policy.

The Court finds that the coverage exclusion does not
violate any statute or mandatory regulation that applies to the
Policy. There is no controlling case law finding that the

coverage exclusion violates public policy.[2] Accordingly, the exclusion in the Policy is not void as against public policy.

Summary judgment is granted in favor of State Farm as to Count One.

B.    **Count Two -- Breach of the Implied Covenant of Good Faith and Fair Dealing/Bad Faith**

State Farm asserts that "plaintiffs' cause of action sounding in insurance bad faith must fail[]" because "plaintiffs cannot establish that State Farm breached any express duties under the subject policy[.]" Doc. #77 at 15. Plaintiffs do not respond to defendant's arguments on this point.

Under Connecticut law, a "duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 67 A.3d 961, 986 (Conn. 2013) (citation and quotation marks omitted). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual

---

[2] Indeed, plaintiffs acknowledge a number of cases "where courts have upheld State Farm's exclusionary language[,]" but cite none where the exclusion has been struck down as contrary to public policy. Doc. #90 at 9; see also Doc. #77 at 11-14 (reviewing relevant cases approving the coverage exclusion).

obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 849 A.2d 382, 388 (Conn. 2004) (citation and quotation marks omitted). Specifically, in the context of an insurance contract, a bad faith action requires a "denial of a contractually mandated benefit[.]" Capstone Bldg. Corp., 67 A.3d at 987.

Here, the Court has concluded that State Farm properly denied plaintiffs' claim. It is undisputed that the loss was caused by a water leak from the broken pot filler. Under the clear and unambiguous language of the Policy, this event was excluded. "Because plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage." Chorches v. Stewart Title Guar. Co., 48 F. Supp. 3d 151, 157 (D. Conn. 2014).

Plaintiffs assert that State Farm acted in bad faith in the "investigation and adjustment of [their] claim[.]" Doc. #44 at 2. Nonetheless, "[u]nless the alleged failure to investigate led to the denial of a contractually mandated benefit in this case, the plaintiffs have not raised a viable bad faith claim." Capstone Bldg. Corp., 67 A.3d at 987. "Allegations of a mere coverage dispute or a negligent investigation by an insurer will not state a claim for bad faith. Thus, a plaintiff cannot recover for bad faith ... if the insurer had some arguably

justifiable reason for refusing to pay ... the claim." <u>McCulloch</u>
<u>v. Hartford Life & Acc. Ins. Co.</u>, 363 F. Supp. 2d 169, 177 (D.
Conn. 2005), <u>adhered to on reconsideration</u>, 2005 WL 8165602 (D.
Conn. Sept. 29, 2005) (citations omitted). Accordingly,
plaintiffs' bad faith claim fails as a matter of law and summary
judgment is granted in favor of State Farm on Count Two.

### C.   <u>Count Three -- Negligence</u>

The Amended Complaint alleges that State Farm was
"negligent in the adjustment and handling of the Plaintiffs'
claim" because "[i]t hired, monitored and/or supervised its
agents, servants and employees who failed to properly
investigate the cause of loss and extent of Plaintiffs
damages[]" and "[i]t notified Plaintiffs that the subject loss
was not covered by the subject property without investigating
the cause of loss[,]" which led to plaintiffs being "damaged and
harmed." Doc. #44 at 3. State Farm asserts that the negligence
claim must fail because "State Farm did not breach its contract
with the plaintiffs and ... did not act in bad faith in
adjusting the plaintiffs claim[.]" Doc. #77 at 15. Plaintiffs do
not respond to this argument.

It is well established that a negligence claim requires a
showing of "duty; breach of that duty; causation; and actual
injury." <u>RK Constructors, Inc. v. Fusco Corp.</u>, 650 A.2d 153, 155
(Conn. 1994). "[A] defendant may be liable in negligence for the

breach of duty which arises out of a contractual relationship." Neiditz v. Morton S. Fine & Assocs., Inc., 508 A.2d 438, 441 (Conn. 1986).

However, "failure to investigate a claim is not a cause of action in itself. Rather, it is evidence of bad faith, which may entitle an insured to additional damages, beyond the recovery of the benefits due under the insurance policy, if the insurer denies the claim. That is, failure to investigate is evidence of an unreasonable denial of a claim." Capstone Bldg. Corp, 67 A.3d at 990 (citation and quotation marks omitted). "[I]n the absence of a breach of an express duty under the insurance policy, there is no independent cause of action for deficiencies in the insurer's investigation." Id.

The Court has concluded that State Farm did not improperly deny plaintiffs' claim and therefore did not breach a duty that arose out of the contractual relationship. Thus, plaintiffs cannot sustain a separate claim of negligence based on failure to investigate. Accordingly, summary judgment is granted in favor of State Farm as to Count Three.

D.   **Count Five -- Declaratory Judgment**

The final surviving count of the Amended Complaint seeks a declaratory judgment that "the Defendant is obligated to afford coverage and pay for the Plaintiffs' property damages pursuant to the subject policy." Doc. #44 at 7.

"The purpose of a declaratory judgment action, as authorized by General Statutes §52-29 and Practice Book §17-55, is to secure an adjudication of rights when there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." New London Cty. Mut. Ins. Co. v. Nantes, 36 A.3d 224, 232 (Conn. 2012) (citation and quotation marks omitted). The Connecticut declaratory judgment statute applies to "dispute[s] over rights and liabilities under an insurance policy." Id. (collecting cases).

As previously discussed, the Court has found that no genuine issue of material fact exists as to whether State Farm was obligated to pay plaintiffs for their loss under the Policy. Accordingly, summary judgment is granted in favor of State Farm as to Count Five.

**IV.   CONCLUSION**

For the reasons set forth herein, defendant's motion for summary judgment is **GRANTED.**

Judgment shall enter in favor of defendant State Farm Fire & Casualty Co.

The Clerk shall close this case.

It is so ordered this 21st day of January, 2022, at New Haven, Connecticut.

> /s/
> _____
> HON. SARAH A. L. MERRIAM
> UNITED STATES DISTRICT JUDGE